IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 03-0488-CG-M** |
| ) | |
| **ONE 1991 CHEVROLET CORVETTE,** ) | |
| **and $22,522.00, MORE OR LESS, IN** ) | |
| **UNITED STATES CURRENCY** ) | |
| ) | |
| **Defendants.** | |

### ORDER

This matter is before the court on the motion for summary judgment and brief in support of plaintiff, the United States of America (Docs. 39,40), the response thereto of claimant, James E. Body (Doc. 48), claimant's motion to strike (Doc. 49), the response of the United States (Doc. 50), the United States' motion to strike (Doc. 51), and the United States' response to claimant's motion to strike (Doc. 52). The court finds that claimant's motion to strike is due to be denied and the United States' motion to strike is due to be granted. The court also finds that the United States has demonstrated probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance and that claimant has failed to show, by a preponderance of the evidence, that the property is not subject to forfeiture. Therefore, the motion to the United States for summary judgment is due to be granted.

## BACKGROUND

On March 5, 2003, the Mobile County Sheriff's Office, Narcotics Division, executed a search warrant at claimant's residence. When the deputies arrived, they found approximately 15 individuals outside the residence, including claimant. (Cuthkelvin Affid. p. 3). Claimant had a paper bag in his front pants pocket that contained $2,527.00 in U.S. currency. (Cuthkelvin Affid. p. 3). The currency was separated by denomination, folded and bundled together with rubber bands. (Walker Affid. p. 3). Claimant waived his Miranda rights and agreed to cooperate. (Cuthkelvin Affid. p. 3, Walker Affid. p. 3). One of the officers, Deputy Walker, had investigated and arrested claimant in 1994 for distribution of a controlled substance, for which claimant was sentenced to serve 20 years in state prison. (Walker Affid. pp. 2, 4; Doc. 40 Ex. K). Claimant had been released from prison on parole in April 2000. (Doc. 40, Ex. K). Claimant also has a 1986 drug-related conviction.

In a safe located in claimant's residence, the officers found a plastic shopping bag tied at the top which contained two brown paper bags that held a total of $19,995.00 in U.S. currency separated by denomination, folded and bundled together with rubber bands. (Walker Affid. p. 3, Cuthkelvin Affid. p. 4). Deputy Walker asked claimant if he was still selling narcotics, and claimant responded that he did from time-to-time because there was nothing else for him when he got out of prison. (Walker Affid. p. 4). Deputy Walker asked claimant if there were any narcotics in his residence, and claimant responded "No. It all been turned to cash." (Walker Affid. p. 4). When asked if he had any dealings with Larry Collins, a person of interest to the Narcotics Division concerning cocaine distribution, claimant stated that at least three times he had bought "halves" and "quarters." (Walker Affid. pp. 4-5). When asked whether "halves" and "quarters" meant half-kilos and quarter-kilos of cocaine, claimant responded

2

affirmatively. (Walker Affid. p. 5). Claimant stated that he had paid $11,000 each for the "halves." (Walker Affid. p. 5).

Officers also found a .45 caliber Taurus revolver in claimant's bedroom closet which claimant said he had for safekeeping for a family member, Ashley Snowden. (Walker Affid. p. 5). Deputy Houseknecht's canine partner, Otter, alerted to a white 1991 Chevrolet Corvette, Vin 1G1YY2835M5108770, which was parked in claimant's garage, but the officers found no physical presence of narcotics in the Corvette. (Cuthkelvin Affid. p. 6; Houseknecht Affid. p. 4). According to claimant, he bought the car for $6,500 cash in December 2002. (Walker Affid. p. 5-6; Doc. 40 Ex. O). When asked where he got the money to buy the Corvette, claimant told Deputy Walker "You know where it came from." (Walker Affid. pp. 5-6). A search of the garage yielded drug paraphernalia and substances later determined to be cocaine. (Goolsby Affid. pp. 2-3, Warren Affid. pp. 4-5).

Twenty-six pounds of marijuana and $2,500.00 in cash were also found in another car parked at claimant's residence and $1,8533.00 in cash was found on one of the people standing outside claimant's house. (Cuthkelvin Affid. pp. 4-5). These items were forfeited administratively after no one filed a claim for them. (Doc. 40 Ex. M). Two of the people outside claimant's residence, Ashley Snowden and Darnell Watkins, have prior drug-related convictions. (Doc. 40, Ex. L, M). One of claimant's sons, Antonio Law, testified that Watkins would deliver 1 or 2 kilos of cocaine to claimant every week or every other week and that claimant would front Law 50% of the cocaine. (Law Affid. p. 2). According to Law, claimant would sell the remaining cocaine to others. (Law Affid. p. 2). After Law sold the cocaine fronted to him by claimant, he would pay claimant about $22,000.00 cash per

kilo of cocaine. (Law Affid. p. 2).  According to Law, these transactions took place regularly and frequently between 2000 and October to November 2002. (Law Affid. p. 2).  Law estimated that he earned a profit of about $2,500 per kilo of cocaine and that claimant would have earned about the same. (Law Affid. p. 2).

There is no federal criminal case against claimant.  Claimant's State of Alabama parole was revoked on May 14, 2003, and his parole review date is not until April 2007. (Doc. 40 Ex. K).

## DISCUSSION

### A. Claimant's Motion to Strike

Claimant moves to strike the portion of the Government's narrative summary of facts which relates to individuals other than himself who were at his residence during the execution of the warrant, namely Snowden and Watkins, and property seized during the execution of the warrant.  According to claimant, such facts have no relationship or relevancy to claimant.  However, there is evidence that Watkins was claimant's source of cocaine. "The Government may use both circumstantial evidence and hearsay evidence to show probable cause." United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004).  Evidence of claimants' contemporaneous affiliation with known drug traffickers at the time of the seizure supports the Government's theory that the property in claimant's possession is connected to illegal drug trafficking. Id. at 224.  The court finds that the fact that known drug traffickers, drugs and drug paraphernalia were present at claimant's residence at the time of the seizure is strong circumstantial evidence of probable cause.   Moreover, as will be explained in more detail below, the court finds that summary judgment is due to be granted even without consideration of the

evidence claimant seeks to strike. Therefore, claimant's motion to strike is due to be denied.

**B. United States' Motion to Strike**

The United States moves to strike evidence submitted by claimant that he generated legitimate income from his paving work. When asked to provide information regarding his earnings and income, claimant invoked his Fifth Amendment privilege. Claimant refused to produce his federal, state, or local tax returns from 1990 to 2003 or to authorize the IRS to release copies of his tax returns. (Doc. 48, Ex. C pp. 5-6). Claimant refused to allow the Social Security Administration to release information concerning his earnings and refused to execute any other releases concerning his employment or earnings. (Doc. 48, Ex. C, pp. 6-7). Claimant now wants to offer evidence of alleged legitimate income.

Claimant had a right to assert his Fifth Amendment privilege when asked to produce documents concerning his income. United States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123, 1129 (11th Cir. 1996) (citations omitted). However, the court finds that the information claimant now wishes to offer in his defense concerning his alleged legitimate income should be stricken. "It is well-accepted that a witness' direct testimony can be stricken if she [or he] invokes the fifth amendment on cross-examination to shield that testimony from scrutiny." U.S. v. Two Parcels Property Located at 2730 Highway 31 Jemison, Chilton County, Ala., 909 F.Supp. 1450, 1456 (M.D.Ala. 1995) (citations omitted). The court finds it would clearly be prejudicial to the United States to allow claimant to offer evidence after the close of discovery on issues that he refused to provide information on during discovery. Although claimant provided some information about his income,

5

including handwritten contracts purporting to be paving proposals or contracts, he refused to provide the necessary releases and other information to allow the United States to discover the accuracy of the information provided. "A party who asserts the privilege may not 'convert [it] from the shield against compulsory self-incrimination which it was intended to be into a sword ...'"Arango v. U.S. Dept. of the Treasury, 115 F.3d 922, 926 (11th Cir. 1997) (quoting United States v. Rylander, 460 U.S. 752, 758-59, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983)); see also U.S. v. $110,873.00 in U.S. Currency, 2004 WL 2359726, *4 (N.D.Ohio Oct. 6, 2004) ("Once invoked in response to a discovery request, a forfeiture claimant cannot testify at trial or oppose the government's motion for summary judgment through affidavits." citation omitted); Pedrina v. Chun, 906 F.Supp. 1377, 1398 (D.Hawaii 1995), aff'd. 97 F.3d 1296 (9th Cir. 1996), cert denied, 520 U.S. 1968, 1175 S.Ct. 2441, 138 L.Ed.2d 201 (1997) ("Defendants may not rely on their own testimony or affidavits to support their version of a disputed issue where they have asserted their Fifth Amendment right not to answer questions concerning that very same issue." citation omitted); U.S. v. Sixty Thousand Dollars ($60,000.00) in U.S. Currency, 763 F.Supp. 909, 914 (E.D.Mich. 1991) ("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." citation omitted). Thus, the motion of the United States to strike claimant's discovery responses submitted to support his claim that he generated legitimate income from his paving work is due to be granted.

**C. Summary Judgment Standard**

This forfeiture proceeding was initiated after the April 2000 effective date of the Civil Asset Forfeiture Reform Act (CAFRA). Therefore the procedures set forth in 18 US.C. § 983 apply. Under

CAFRA the burden of proof is on the United States to establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

The United States alleges that the property seized is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which provides for forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

In a civil forfeiture action under this section, "the government must establish probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." United States v. Route 2, Box 472, 136 Acres More or Less, 60 F.3d 1523, 1526 (11th Cir.1995). "Whether the government has shown probable cause for forfeiture is a question of law." U.S. v. Cleckler, 270 F.3d 1331, 1334 (11th Cir. 2001) (citation omitted). "Once the government has established probable cause, the burden of proof shifts to the claimants to show, by a preponderance of the evidence, that the property is not subject to forfeiture." Id. (citation omitted). To meet this burden, claimant may "establish by a preponderance of the evidence one of two affirmative defenses: either that the money was not the proceeds of illegal drug activity, or that [he] was an innocent owner." United States v. $242,484.00, 389 F.3d 1149, 1152 (11th Cir. 2004) (citation omitted).

**D. Probable Cause**

As stated above, the Government has the initial burden of showing probable cause to believe that the money is the proceeds of, or is otherwise connected to, any illegal drug transaction.

> Probable cause in this context is a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion - the same standard used to determine the legality of arrests, searches, and seizures in criminal law." United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties, 941 F.2d 1428, 1440 (11th Cir.1991) (internal quotation marks and citations omitted); see also United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir.2001) (per curiam) (same); United States v. Four Parcels of Real Prop. on Lake Forrest Circle, 870 F.2d 586, 590 n. 10 (11th Cir.1989) (probable cause in this context is "the same standard used to determine the legality of arrests, searches, and seizures in criminal law"); United States v. $364,960.00, 661 F.2d 319, 323 (5th Cir. Unit B 1981) (noting "that the definition of probable cause applicable here is the same as that which applies elsewhere").

United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004). "[T]he existence of probable cause is judged not with clinical detachment, but with a common sense view to the realities of normal life." Four Parcels of Real Prop. in Greene & Tuscaloosa Counties, 941 F.2d at 1440 (internal quotations and citations omitted). As noted above with regard to claimant's motion to strike, the Government may use both circumstantial evidence and hearsay evidence to show probable cause. United States v. $242,484.00, 389 F.3d at 1160.

After a review of the evidence in this case, the court finds that the United States has met is burden of establishing probable cause. Claimant admitted to Deputy Walker that he had continued to sell narcotics since being paroled from prison in April 2000. Claimant admitted to purchasing half or quarter kilos of cocaine at least three times. There is also testimony that 1 or 2 kilos were delivered to claimant every to every other week at a price of $11,000 per half kilo. Claimant also admitted to turning the drugs into cash. The testimony indicates that each kilo would have brought claimant approximately $2,500 profit. Claimant happened to have $2,527.00 in cash on him when he was searched. The $19,995 in the safe was separated folded and bundled with rubber bands the way narcotics dealers commonly maintain cash. (Walker Affid. p. 4); see United States v. $242,484.00,

8

389 F.3d 1149, 1161-62 (11th Cir. 2004 (A drug agent's observation that cash bundled with rubber bands is indicative of drug proceeds is to be given weight.)

As to the Corvette, claimant's statement that Deputy Walker knew where the money to purchase it came from , in the context it was given, is a tacit admission that it was purchased with drug money.  Claimant was aware that Walker not only knew of, but had been actively involved in, convicting claimant for a previous drug conviction.  Additionally, the drug detection dog's alert to the vehicle has some probative value that there is a connection to drugs.  United States v. $22,991.00, 227 F.Supp.2d 1220, 1233-34 (S.D. Ala. 2002) (citation omitted).

Claimant's narcotics-related criminal history is another factor that supports the United States' allegations. See United States v. $121,100 in U.S. Currency, 999 F.2d 1503, 1506-07 (11th Cir. 1993).  In light of all of the above evidence, the court finds that the United States has met its burden of establishing probable cause.

**E. Claimant's Defense**

Claimant contends that the cash and money used to purchase the car were derived from legitimate income from paving work.  However, claimant invoked the Fifth Amendment upon being asked to produce documents to verify the amount of income he received from paving work and, as a result, the court has determined that all evidence supporting claimant's contention that he had legitimate income from paving work should be stricken.    In addition, the court can infer from the fact that claimant refused to provide the information that the information would be adverse to claimant.[1]  United

---

[1] "There is an exception to this rule when a claimant in the civil case is also a defendant in the criminal case and is forced to choose between waiving the privilege and losing the case on summary

9

States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d at 1129.  As such, the court finds that claimant has not met his burden of showing, by a preponderance of the evidence, that the property is not subject to forfeiture.  Therefore, the court finds that summary judgment is due to be GRANTED in favor of the United States.

## CONCLUSION

For the reasons stated above, claimant's motion to strike (Doc. 49) is **DENIED**; the United States' motion to strike (Doc. 51) is **GRANTED**; and the motion of the United States for summary judgment (Doc. 39) is **GRANTED**.

**DONE and ORDERED** this 1st day of August, 2005.

/s/   Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

---

judgment." United States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123 at 1129 (citation omitted).  However, there is no criminal case against the claimant here.  "[T]he Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination." Arango v. U.S. Dept. of the Treasury, 115 F.3d 922, 926 (11th Cir. 1997) (citations omitted).