## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 03-0488-CG-M |
| | ) | |
| ONE 1991 CHEVROLET CORVETTE, | ) | |
| and $22,522.00, MORE OR LESS, IN | ) | |
| UNITED STATES CURRENCY | ) | |
| | ) | |
|     Defendants. | ) | |

### AMENDED ORDER

It has been brought to the court's attention that this court's previous order of August 1, 2005, granting summary judgment in favor of plaintiff (Doc. 56), confused the applicable standard for forfeiture.[1]  After reviewing the order, the court agrees and hereby **RESCINDS** the August 1, 2005 order (Doc. 56) and the corresponding final judgment of forfeiture (Doc. 57) and enters the following amended order.

This matter is before the court on the motion for summary judgment and brief in support of

---

[1] Congress amended 18 U.S.C.A. § 983 with the passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). The amendments changed the allocation of the burden of proof. Previously, the burden was on the government to establish "probable cause."  The claimant then had to prove by a preponderance of the evidence that the property was not subject to forfeiture. Under 18 U.S.C. § 983(c), "Congress now requires that the Government meet a stiffer burden to show by a preponderance of the evidence that the property is subject to forfeiture." U.S. v. Certain Real Property Located at 263 Weatherbrook Lane, Anniston, Alabama, known as "The Platinum Club", 202 F.Supp.2d 1275, 1276 (N.D. Ala. 2002).

plaintiff, the United States of America (Docs. 39,40), the response thereto of claimant, James E. Body

(Doc. 48), claimant's motion to strike (Doc. 49), the response of the United States (Doc. 50), the

United States' motion to strike (Doc. 51), and the United States' response to claimant's motion to

strike (Doc. 52).  The court finds that claimant's motion to strike is due to be denied and the United

States' motion to strike is due to be granted.  The court also finds that the United States has

demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a

matter of law.   Therefore, the motion to the United States for summary judgment is due to be granted.

## BACKGROUND

On March 5, 2003, the Mobile County Sheriff's Office, Narcotics Division, executed a search

warrant at claimant's residence.  When the deputies arrived, they found approximately 15 individuals

outside the residence, including claimant. (Cuthkelvin Affid. p. 3).  Claimant had a paper bag in his front

pants pocket that contained $2,527.00 in U.S. currency. (Cuthkelvin Affid. p. 3).  The currency was

separated by denomination, folded and bundled together with rubber bands. (Walker Affid. p. 3).

Claimant waived his Miranda rights and agreed to cooperate.  (Cuthkelvin Affid. p. 3, Walker Affid. p.

3).  One of the officers, Deputy Walker, had investigated and arrested claimant in 1994 for distribution

of a controlled substance, for which claimant was sentenced to serve 20 years in state prison. (Walker

Affid. pp. 2, 4; Doc. 40 Ex. K).  Claimant had been released from prison on parole in April 2000.

(Doc. 40, Ex. K).   Claimant also has a 1986 drug-related conviction.

In a safe located in claimant's residence, the officers found a plastic shopping bag tied at the top

which contained two brown paper bags that held a total of $19,995.00 in U.S. currency separated by

denomination, folded and bundled together with rubber bands. (Walker Affid. p. 3, Cuthkelvin Affid. p.

4).  Deputy Walker asked claimant if he was still selling narcotics, and claimant responded that he did

from time-to-time because there was nothing else for him when he got out of prison. (Walker Affid. p.

4).  Deputy Walker asked claimant if there were any narcotics in his residence, and claimant responded

"No. It all been turned to cash." (Walker Affid. p. 4).  When asked if he had any dealings with Larry

Collins, a person of interest to the Narcotics Division concerning cocaine distribution, claimant stated

that at least three times he had bought "halves" and "quarters." (Walker Affid. pp. 4-5).   When asked

whether "halves" and "quarters" meant half-kilos and quarter-kilos of cocaine, claimant responded

affirmatively. (Walker Affid. p. 5).  Claimant stated that he had paid $11,000 each for the "halves."

(Walker Affid. p. 5).

        Officers also found a .45 caliber Taurus revolver in claimant's bedroom closet which claimant

said he had for safekeeping for a family member, Ashley Snowden. (Walker Affid. p. 5).  Deputy

Houseknecht's canine partner, Otter, alerted to a white 1991 Chevrolet Corvette, Vin

1G1YY2385M5108771, which was parked in claimant's garage, but the officers found no physical

presence of narcotics in the Corvette. (Cuthkelvin Affid. p. 6; Houseknecht Affid. p. 4).   According to

claimant, he bought the car for $6,500 cash in December 2002. (Walker Affid. p. 5-6; Doc. 40 Ex.

O).  When asked where he got the money to buy the Corvette, claimant told Deputy Walker "You

know where it came from." (Walker Affid. pp. 5-6).  A search of the garage yielded drug

paraphernalia and substances later determined to be cocaine. (Goolsby Affid. pp. 2-3, Warren Affid.

pp. 4-5).

        Twenty-six pounds of marijuana and $2,500.00 in cash were also found in another car parked

at claimant's residence and $1,8533.00 in cash was found on one of the people standing outside

3

claimant's house. (Cuthkelvin Affid. pp. 4-5). These items were forfeited administratively after no one filed a claim for them. (Doc. 40 Ex. M). Two of the people outside claimant's residence, Ashley Snowden and Darnell Watkins, have prior drug-related convictions. (Doc. 40, Ex. L, M). One of claimant's sons, Antonio Law, testified that Watkins would deliver 1 or 2 kilos of cocaine to claimant every week or every other week and that claimant would front Law 50% of the cocaine. (Law Affid. p. 2). According to Law, claimant would sell the remaining cocaine to others. (Law Affid. p. 2). After Law sold the cocaine fronted to him by claimant, he would pay claimant about $22,000.00 cash per kilo of cocaine. (Law Affid. p. 2). According to Law, these transactions took place regularly and frequently between 2000 and October to November 2002. (Law Affid. p. 2). Law estimated that he earned a profit of about $2,500 per kilo of cocaine and that claimant would have earned about the same. (Law Affid. p. 2).

There is no federal criminal case against claimant. Claimant's State of Alabama parole was revoked on May 14, 2003, and his parole review date is not until April 2007. (Doc. 40 Ex. K).

## DISCUSSION

### A. Claimant's Motion to Strike

Claimant moves to strike the portion of the Government's narrative summary of facts which relates to individuals other than himself who were at his residence during the execution of the warrant, namely Snowden and Watkins, and property seized during the execution of the warrant. According to claimant, such facts have no relationship or relevancy to claimant. However, there is evidence that Watkins was claimant's source of cocaine. The court finds that the fact that known drug traffickers,

4

drugs and drug paraphernalia were present at claimant's residence at the time of the seizure is strong

circumstantial evidence that the vehicle and cash are proceeds of an exchange for a controlled

substance.    Moreover, the court finds that summary judgment is due to be granted even without

consideration of the evidence claimant seeks to strike.  Therefore, claimant's motion to strike is due to

be denied.


**B. United States' Motion to Strike**

The United States moves to strike evidence submitted by claimant that he generated legitimate

income from his paving work.  When asked to provide information regarding his earnings and income,

claimant invoked his Fifth Amendment privilege.  Claimant refused to produce his federal, state, or local

tax returns from 1990 to 2003 or to authorize the IRS to release copies of his tax returns. (Doc. 48,

Ex. C  pp. 5-6).  Claimant refused to allow the Social Security Administration to release information

concerning his earnings and refused to execute any other releases concerning his employment or

earnings. (Doc. 48, Ex. C, pp. 6-7).    Claimant now wants to offer evidence of alleged legitimate

income.

Claimant had a right to assert his Fifth Amendment privilege when asked to produce documents

concerning his income. United States  v. Two Parcels of Real Property Located in Russell County,

Ala., 92 F.3d 1123, 1129 (11th Cir. 1996) (citations omitted).  However, the court finds that the

information claimant now wishes to offer in his defense concerning his alleged legitimate income should

be stricken.  "It is well-accepted that a witness' direct testimony can be stricken if she [or he] invokes

the fifth amendment on cross-examination to shield that testimony from scrutiny." U.S. v. Two Parcels

Property Located at 2730 Highway 31 Jemison, Chilton County, Ala., 909 F.Supp. 1450, 1456

(M.D.Ala. 1995) (citations omitted).  The court finds it would clearly be prejudicial to the United States

to allow claimant to offer evidence after the close of discovery on issues that he refused to provide

information on during discovery.  Although claimant provided some information about his income,

including handwritten contracts purporting to be paving proposals or contracts, he refused to provide

the necessary releases and other information to allow the United States to discover the accuracy of the

information provided.  "A party who asserts the privilege may not 'convert [it] from the shield against

compulsory self-incrimination which it was intended to be into a sword ...'"Arango v. U.S. Dept. of the

Treasury, 115 F.3d 922, 926 (11th Cir. 1997) (quoting United States v. Rylander, 460 U.S. 752,

758-59, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983)); see also  U.S. v. $110,873.00 in U.S.

Currency, 2004 WL 2359726, *4 (N.D.Ohio Oct. 6, 2004) ("Once invoked in response to a

discovery request, a forfeiture claimant cannot testify at trial or oppose the government's motion for

summary judgment through affidavits." citation omitted); Pedrina v. Chun, 906 F.Supp. 1377, 1398

(D.Hawaii 1995), aff'd. 97 F.3d 1296 (9th Cir. 1996), cert denied, 520 U.S. 1968, 1175 S.Ct. 2441,

138 L.Ed.2d 201 (1997) ("Defendants may not rely on their own testimony or affidavits to support

their version of a disputed issue where they have asserted their Fifth Amendment right not to answer

questions concerning that very same issue." citation omitted); U.S. v. Sixty Thousand Dollars

($60,000.00) in U.S. Currency, 763 F.Supp. 909, 914 (E.D.Mich. 1991) ("A defendant may not use

the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her

accusers with surprise testimony at trial." citation omitted).  Thus, the motion of the United States to

strike claimant's discovery responses submitted to support his claim that he generated legitimate income

from his paving work is due to be granted.

**C. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**D. Forfeiture Standard**

This forfeiture proceeding was initiated after the April 2000 effective date of the Civil Asset Forfeiture Reform Act (CAFRA).  Therefore the procedures set forth in 18 US.C. § 983 apply.  Under CAFRA the burden of proof is on the United States to establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). [2]

The United States alleges that the property seized is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which provides for forfeiture of:

---

[2] In an action for the civil forfeiture of property, where the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government must establish by a preponderance of the evidence that the property is subject to forfeiture and must establish "that there was a substantial connection between the property and the offense." 18 U.S.C.A. § 983(c)(3); see also United States v. $22,991.00, More or Less, in United States Currency, 227 F.Supp.2d 1220, 1231 (S.D.Ala. 2002). However, in this case the United States asserts that the defendant property is proceeds from an exchange for a controlled substance and does not claim the property facilitated the offense.

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

The United States contends in this case that the defendant property constitutes proceeds traceable to an exchange for a controlled substance.   The court notes that the United States is no longer permitted to use hearsay evidence. U.S. v. Certain Real Property Located at 263 Weatherbrook Lane, Anniston, Alabama, known as "The Platinum Club", 202 F.Supp.2d 1275, 1276 (N.D. Ala. 2002) (citation omitted).

**E. Evidence of Proceeds**

After a review of the evidence in this case, the court finds that the United States has met its burden of establishing by a preponderance of the evidence that the defendant property constitutes proceeds from an exchange for a controlled substance.   Claimant admitted to Deputy Walker that he had continued to sell narcotics since being paroled from prison in April 2000.  Claimant admitted to purchasing half or quarter kilos of cocaine at least three times.  There is also testimony that 1 or 2 kilos were delivered to claimant every to every other week at a price of $11,000 per half kilo.  Claimant also admitted to turning the drugs into cash.  The testimony indicates that each kilo would have brought claimant approximately $2,500 profit.  Claimant happened to have $2,527.00 in cash on him when he was searched.  The $19,995 in the safe was separated folded and bundled with rubber bands the way narcotics dealers commonly maintain cash. (Walker Affid. p. 4); see United States v. $242,484.00, 389 F.3d 1149, 1161-62 (11th Cir. 2004 (A drug agent's observation that cash bundled with rubber bands is indicative of drug proceeds is to be given weight.)

As to the Corvette, claimant's statement that Deputy Walker knew where the money to purchase it came from, in the context it was given, is a tacit admission that it was purchased with drug money.  Claimant was aware that the deputy not only knew of, but had been actively involved in, convicting claimant for a previous drug conviction.  Additionally, the drug detection dog's alert to the vehicle has some probative value that there is a connection to drugs. United States v. $22,991.00, 227

F.Supp.2d 1220, 1233-34 (S.D. Ala. 2002) (citation omitted).

Claimant's narcotics-related criminal history is another factor that supports the United States' allegations. See United States v. Carrell, 252 F.3d 1193, 1201-02 (11th Cir. 2001).

Claimant contends that the cash and money used to purchase the car were derived from legitimate income from paving work. However, claimant invoked his right not to incriminate himself under the Fifth Amendment upon being asked to produce documents to verify the amount of income he received from paving work and, as a result, the court has determined that all evidence supporting claimant's contention that he had legitimate income from paving work should be stricken. In addition, the court can infer from the fact that claimant refused to provide the information that the information would be adverse to claimant.[3] United States  v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d at 1129. As previously stated, claimant may not survive summary judgment by resting "on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). As such, the court finds that the United States has met its burden of establishing that the defendant property constitutes proceeds. Therefore, the court finds that summary judgment is due to be granted in favor of the United States.

## CONCLUSION

For the reasons stated above, claimant's motion to strike (Doc. 49) is **DENIED**; the United States' motion to strike (Doc. 51) is **GRANTED**; and the motion of the United States for summary

---

[3] "There is an exception to this rule when a claimant in the civil case is also a defendant in the criminal case and is forced to choose between waiving the privilege and losing the case on summary judgment." United States  v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123 at 1129 (citation omitted). However, there is no criminal case against the claimant here. "[T]he Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination." Arango v. U.S. Dept. of the Treasury, 115 F.3d 922, 926 (11th Cir. 1997) (citations omitted).

judgment (Doc. 39) is **GRANTED**.

**DONE and ORDERED** this 3rd day of August, 2005.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE